(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BULLOCK *v.* BANKCHAMPAIGN, N. A.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 11–1518.   Argued March 18, 2013—Decided May 13, 2013

Petitioner's father established a trust for the benefit of petitioner and his siblings, and made petitioner the (nonprofessional) trustee. The trust's sole asset was the father's life insurance policy. Petitioner borrowed funds from the trust three times; all borrowed funds were repaid with interest. His siblings obtained a judgment against him in state court for breach of fiduciary duty, though the court found no apparent malicious motive. The court imposed constructive trusts on certain of petitioner's interests—including his interest in the original trust—in order to secure petitioner's payment of the judgment, with respondent serving as trustee for all of the trusts. Petitioner filed for bankruptcy. Respondent opposed discharge of petitioner's state-court-imposed debts to the trust, and the Bankruptcy Court granted respondent summary judgment, holding that petitioner's debts were not dischargeable pursuant to 11 U. S. C. §523(a)(4), which provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Federal District Court and the Eleventh Circuit affirmed. The latter court reasoned that "defalcation requires a known breach of fiduciary duty, such that the conduct can be characterized as objectively reckless."

*Held*: The term "defalcation" in the Bankruptcy Code includes a culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior. Pp. 4−9.

   (a) While "defalcation" has been an exception to discharge in a bankruptcy statute since 1867, legal authorities have long disagreed about its meaning. Broad definitions of the term in modern and older dictionaries are unhelpful, and courts of appeals have disagreed

about what mental state must accompany defalcation's definition. Pp. 4−5.

(b) In *Neal* v. *Clark,* 95 U. S. 704, this Court interpreted the term "fraud" in the Bankruptcy Code's exceptions to discharge to mean "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id.*, at 709. The term "defalcation" should be treated similarly. Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, "defalcation" requires an intentional wrong. An intentional wrong includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Where actual knowledge of wrongdoing is lacking, conduct is considered as equivalent if, as set forth in the Model Penal Code, the fiduciary "consciously disregards," or is willfully blind to, "a substantial and unjustifiable risk" that his conduct will violate a fiduciary duty. Pp. 5−7.

(c) Several considerations support this interpretation. First, statutory context strongly favors it. The canon *noscitur a sociis* argues for interpreting "defalcation" as similar to its linguistic neighbors "embezzlement," "larceny," and "fraud," which all require a showing of wrongful or felonious intent. See, *e.g., Neal, supra,* at 709. Second, the interpretation does not make the word identical to its statutory neighbors. "Embezzlement" requires conversion, "larceny" requires taking and carrying away another's property, and "fraud" typically requires a false statement or omission; while "defalcation" can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity. Third, the interpretation is consistent with the longstanding principle that "exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau* v. *Geiger*, 523 U. S. 57, 62. It is also consistent with statutory exceptions to discharge that Congress normally confines to circumstances where strong, special policy considerations, such as the presence of fault, argue for preserving the debt, thereby benefiting, for example, a typically more honest creditor. See, *e.g.*, 11 U. S. C. §523(a)(2)(A). Fourth, some Circuits have interpreted the statute similarly for many years without administrative or other difficulties. Finally, it is important to have a uniform interpretation of federal law, the choices are limited, and neither the parties nor the Government has presented strong considerations favoring a different interpretation. Pp. 7−9.

670 F. 3d 1160, vacated and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 11–1518

———

## RANDY CURTIS BULLOCK, PETITIONER *v.* BANKCHAMPAIGN, N. A.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[May 13, 2013]

JUSTICE BREYER delivered the opinion of the Court.

Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U. S. C. §523(a)(4).  We here consider the scope of the term "defalcation."  We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

I

In 1978, the father of petitioner Randy Bullock established a trust for the benefit of his five children.  He made petitioner the (nonprofessional) trustee; and he transferred to the trust a single asset, an insurance policy on his life.  670 F. 3d 1160, 1162 (CA11 2012); App. to Pet. for Cert. 33a.  The trust instrument permitted the trustee to borrow funds from the insurer against the policy's value (which, in practice, was available at an insurance-

company-determined 6% interest rate). *Id*., at 17a, 34a, 50a.

In 1981, petitioner, at his father's request, borrowed money from the trust, paying the funds to his mother who used them to repay a debt to the father's business. In 1984, petitioner again borrowed funds from the trust, this time using the funds to pay for certificates of deposit, which he and his mother used to buy a mill. In 1990, petitioner once again borrowed funds, this time using the money to buy real property for himself and his mother. 670 F. 3d, at 1162. Petitioner saw that all of the borrowed funds were repaid to the trust along with 6% interest. App. to Pet. for Cert. 17a, 45a, 50a; Brief for Petitioner 3; Brief for Respondent 2.

In 1999, petitioner's brothers sued petitioner in Illinois state court. The state court held that petitioner had committed a breach of fiduciary duty. It explained that petitioner "does not appear to have had a malicious motive in borrowing funds from the trust" but nonetheless "was clearly involved in self-dealing." App. to Pet. for Cert. 45a, 52a. It ordered petitioner to pay the trust "the benefits he received from his breaches" (along with costs and attorney's fees). *Id*., at 47a. The court imposed constructive trusts on petitioner's interests in the mill and the original trust, in order to secure petitioner's payment of its judgment, with respondent BankChampaign serving as trustee for all of the trusts. 670 F. 3d, at 1162; App. to Pet. for Cert. 47a–48a. After petitioner tried unsuccessfully to liquidate his interests in the mill and other constructive trust assets to obtain funds to make the court-ordered payment, petitioner filed for bankruptcy in federal court. *Id*., at 27a, 30a.

BankChampaign opposed petitioner's efforts to obtain a bankruptcy discharge of his state-court-imposed debts to the trust. And the Bankruptcy Court granted summary judgment in the bank's favor. It held that the debts fell

within §523(a)(4)'s exception "as a debt for defalcation while acting in a fiduciary capacity." *Id.*, at 40a–41a. Hence, they were not dischargeable.

The Federal District Court reviewed the Bankruptcy Court's determination. It said that it was "convinced" that BankChampaign was "abusing its position of trust by failing to liquidate the assets," but it nonetheless affirmed the Bankruptcy Court's decision. *Id.*, at 27a–28a.

In turn, the Court of Appeals affirmed the District Court. It wrote that "defalcation requires a known breach of a fiduciary duty, such that the conduct can be characterized as objectively reckless." 670 F. 3d, at 1166. And it found that petitioner's conduct satisfied this standard. *Ibid.*

Petitioner sought certiorari. In effect he has asked us to decide whether the bankruptcy term "defalcation" applies "in the absence of any specific finding of ill intent or evidence of an ultimate loss of trust principal." Brief for United States as *Amicus Curiae* 1. See also Pet. for Cert. i. The lower courts have long disagreed about whether "defalcation" includes a scienter requirement and, if so, what kind of scienter it requires. Compare *In re Sherman,* 658 F. 3d 1009, 1017 (CA9 2011) ("defalcation" includes "even innocent acts of failure to fully account for money received in trust" (internal quotation marks and brackets omitted)), with *In re Uwimana*, 274 F. 3d 806, 811 (CA4 2001) (defalcation occurs when "negligence or even an innocent mistake . . . results in misappropriation"), with 670 F. 3d, at 1166 ("defalcation requires . . . conduct [that] can be characterized as objectively reckless"), and with *In re Baylis*, 313 F. 3d 9, 20 (CA1 2002) ("defalcation requires something close to a showing of extreme recklessness"). In light of that disagreement, we granted the petition.

## II
### A

Congress first included the term "defalcation" as an exception to discharge in a federal bankruptcy statute in 1867. See *id*., at 17. And legal authorities have disagreed about its meaning almost ever since. Dictionary definitions of "defalcation" are not particularly helpful. On the one hand, a law dictionary in use in 1867 defines the word "defalcation" as "the act of a defaulter," which, in turn, it defines broadly as one "who is deficient in his accounts, or fails in making his accounts correct." 1 J. Bouvier, Law Dictionary 387, 388 (4th ed. 1852). See also 4 Oxford English Dictionary 369 (2d ed. 1989) (quoting an 1846 definition that defines the term as "'a breach of trust by one who has charge or management of money'"). Modern dictionaries contain similarly broad definitional language. Black's Law Dictionary, for example, defines "defalcation" first as "EMBEZZLEMENT," but, second, as "[l]oosely, the failure to meet an obligation; a nonfraudulent default." Black's Law Dictionary 479 (9th ed. 2009) (hereinafter Black's). See also American Heritage Dictionary 474 (5th ed. 2011) ("To misuse funds; embezzle"); 4 Oxford English Dictionary, *supra*, at 369 ("monetary deficiency through breach of trust by one who has the management or charge of funds; a fraudulent deficiency in money matters"); Webster's New International Dictionary 686 (2d ed. 1954) ("An abstraction or misappropriation of money by one, esp. an officer or agent, having it in trust"); Webster's Third New International Dictionary 590 (1986) ("misappropriation of money in one's keeping").

On the other hand, an 1842 bankruptcy treatise warns that fiduciaries "are not supposed to commit defalcation in the matter of their trust, without . . . at least such criminal negligence as admits of no excuse." G. Bicknell, Commentary on the Bankrupt Law of 1841, Showing Its Operation and Effect 12 (2d ed. 1842). Modern dictionaries

often accompany their broad definitions with illustrative terms such as "embezzle," American Heritage Dictionary, *supra*, at 474, or "fraudulent deficiency," 4 Oxford English Dictionary, *supra*, at 369. And the editor of Black's Law Dictionary has written that the term should be read as limited to deficiencies that are "fraudulent" and which are "*the fault* of someone put in trust of the money." B. Garner, Modern American Usage 232 (3d ed. 2009) (emphasis added).

Similarly, courts of appeals have long disagreed about the mental state that must accompany the bankruptcy-related definition of "defalcation." Many years ago Judge Augustus Hand wrote that "the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake." *In re Bernard*, 87 F. 2d 705, 707 (CA2 1937). But Judge Learned Hand suggested that the term "*may* have included innocent defaults." *Central Hanover Bank & Trust Co.* v. *Herbst*, 93 F. 2d 510, 511 (CA2 1937) (emphasis added). A more modern treatise on trusts ends its discussion of the subject with a question mark. 4 A. Scott, W. Fratcher, & M. Ascher, Scott and Ascher on Trusts §24.26 p. 1797 (5th ed. 2007).

In resolving these differences, we note that this long-standing disagreement concerns state of mind, not whether "defalcation" can cover a trustee's failure (as here) to make a trust more than whole. We consequently shall assume without deciding that the statutory term is broad enough to cover the latter type of conduct and answer only the "state of mind" question.

### B

### 1

We base our approach and our answer upon one of this Court's precedents. In 1878, this Court interpreted the related statutory term "fraud" in the portion of the Bankruptcy Code laying out exceptions to discharge. Justice

Harlan wrote for the Court:

"[D]ebts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Neal* v. *Clark*, 95 U. S. 704, 709 (1878).

We believe that the statutory term "defalcation" should be treated similarly.

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code §2.02(2)(c), p. 226 (1985). See *id.*, §2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, §2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 194, n. 12 (1976) (defining scienter for securities law purposes as "a mental state

embracing intent to deceive, manipulate, or defraud").

2

Several considerations lead us to interpret the statutory term "defalcation" in this way. First, as Justice Harlan pointed out in *Neal*, statutory context strongly favors this interpretation. Applying the canon of interpretation *noscitur a sociis*, the Court there looked to fraud's linguistic neighbor, "embezzlement." It found that both terms refer to different forms of generally similar conduct. It wrote that both are "'*ejusdem generis*,'" of the same kind, and that both are "'referable to the same subject-matter.'" 95 U. S., at 709. Moreover, embezzlement requires a showing of wrongful intent. *Ibid.* (noting that embezzlement "involv[es] moral turpitude or intentional wrong"). See *Moore* v. *United States*, 160 U. S. 268, 269–270 (1895) (describing embezzlement and larceny as requiring "felonious intent"). See also, *e.g.,* W. LaFave, Criminal Law §19.6(a), p. 995 (5th ed. 2010) ("intent to deprive" is part of embezzlement). Hence, the Court concluded, "fraud" must require an equivalent showing. *Neal*, *supra*, at 709. *Neal* has been the law for more than a century. And here, the additional neighbors ("larceny" and, as defined in *Neal*, "fraud") mean that the canon *noscitur a sociis* argues even more strongly for similarly interpreting the similar statutory term "defalcation."

Second, this interpretation does not make the word identical to its statutory neighbors. See *Babbitt* v. *Sweet Home Chapter, Communities for Great Ore.*, 515 U. S. 687, 698 (1995) (noting "[a] reluctance to treat statutory terms as surplusage"). As commonly used, "embezzlement" requires conversion, and "larceny" requires taking and carrying away another's property. See LaFave, Criminal Law §§19.2, 19.5 (larceny); *id.*, §19.6 (embezzlement). "Fraud" typically requires a false statement or omission. See *id.*, §19.7 (discussing fraud in the context of false

pretenses). "Defalcation," as commonly used (hence as Congress might have understood it), can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity. Black's 479. See, *e.g., In re Frankel*, 77 B. R. 401 (Bkrtcy. Ct. WDNY 1987) (finding a breach of fiduciary duty and defalcation based on an unreasonable sale of assets).

Nor are embezzlement, larceny, and fiduciary fraud simply special cases of defalcation as so defined. The statutory provision makes clear that the first two terms apply outside of the fiduciary context; and "defalcation," unlike "fraud," may be used to refer to *nonfraudulent* breaches of fiduciary duty. Black's 479.

Third, the interpretation is consistent with the long-standing principle that "exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau* v. *Geiger*, 523 U. S. 57, 62 (1998) (quoting *Gleason* v. *Thaw*, 236 U. S. 558, 562 (1915)). See *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 244 (1934); *Neal, supra*, at 709. It is also consistent with a set of statutory exceptions that Congress normally confines to circumstances where strong, special policy considerations, such as the presence of fault, argue for preserving the debt, thereby benefiting, for example, a typically more honest creditor. See, *e.g.,* 11 U. S. C. §§523(a)(2)(A), (a)(2)(B), (a)(6), (a)(9) (fault). See also, *e.g.,* §§523(a)(1), (a)(7), (a)(14), (a)(14A) (taxes); §523(a)(8) (educational loans); §523(a)(15) (spousal and child support). In the absence of fault, it is difficult to find strong policy reasons favoring a broader exception here, at least in respect to those whom a scienter requirement will most likely help, namely *nonprofessional* trustees, perhaps administering small family trusts potentially immersed in intrafamily arguments that are difficult to evaluate in terms of comparative fault.

Fourth, as far as the briefs before us reveal, at least

some Circuits have interpreted the statute similarly for many years without administrative, or other practical, difficulties. *Baylis*, 313 F. 3d 9. See also *In re Hyman*, 502 F. 3d 61, 69 (CA2 2007) ("This [scienter] standard . . . also has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean").

Finally, it is important to have a uniform interpretation of federal law, the choices are limited, and neither the parties nor the Government has presented us with strong considerations favoring a different interpretation. In addition to those we have already discussed, the Government has pointed to the fact that in 1970 Congress rewrote the statute, eliminating the word "misappropriation" and placing the term "defalcation" (previously in a different exemption provision) alongside its present three neighbors. See Brief for United States as *Amicus Curiae* 16–17. The Government believes that these changes support reading "defalcation" without a scienter requirement. But one might argue, with equal plausibility, that the changes reflect a decision to make certain that courts would read in similar ways "defalcation," "fraud," "embezzlement," and "larceny." In fact, we believe the 1970 changes are inconclusive.

### III

In this case the Court of Appeals applied a standard of "objectiv[e] reckless[ness]" to facts presented at summary judgment. 670 F. 3d, at 1166. We consequently remand the case to permit the court to determine whether further proceedings are needed and, if so, to apply the heightened standard that we have set forth. For these reasons we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*