In re Warren E. KARCH, member Karch Transportation, LLC, also known as Tim NMN Karch, and Elizabeth M. Karch, Debtors.

Linda Jantz, Peggy Wessels,
and Barbara Thornton,
Plaintiffs–Appellees,

v.

Warren E. Karch, Defendant–Appellant.

BAP No. CO–12–106.

Bankruptcy No. 11–20274.

Adversary No. 11–01604.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Oct. 15, 2013.

———

Submitted on the briefs:

Mark G. Meyers of the Aschenberg Law Group, P.C., Denver, CO, for Defendant–Appellant.

Before MICHAEL, NUGENT, and SOMERS, Bankruptcy Judges.

## OPINION

MICHAEL, Bankruptcy Judge.

**Most judges are right until they are wrong.**[1]

A judge's decision usually stands until it is reversed. In most cases, judges must wait until an appeal of their decision is complete to find out whether the higher court (or courts) agree with them. This time, the bankruptcy court was spared the delay. It found a debt to be non-dischargeable using a standard established by this Court some sixteen years ago. After the bankruptcy court ruled, the United States Supreme Court overruled our prior decision. The appellant argues that a Supreme Court decision trumps a bankruptcy appellate panel decision. His argument has met with no opposition, quite possibly because there is none to be raised.[2] For the reasons set forth below, the decision of the bankruptcy court is reversed.

## I. BACKGROUND[3]

This appeal arises out of the probate estate of Harvey P. Karch ("Harvey"). Harvey had three sons, Warren E. Karch, the appellant in this appeal ("Warren"), Harvey Karch Junior ("Harvey Jr."), and Ronnie Karch ("Ronnie"). Harvey also had three daughters, Linda, Peggy, and Barbara. Peggy had twin daughters Jenise and Jerri. Harvey and his first wife raised Jenise and Jerri until they reached the age of seventeen.

Harvey died on November 23, 2008. A probate action was commenced in Montana state court. Warren was named as the personal representative of Harvey's estate, and served in that capacity during 2009 and 2010. Jason L. Harkins ("Harkins") served as counsel for the estate. In his capacity as personal representative, Warren distributed estate funds to each of the siblings, and to Jenise and Jerri, believing all were proper heirs of the estate. Warren claimed the distributions to Jenise and Jerri were made on the advice of Harkins.

In May of 2010, Linda filed a petition in the probate proceeding to remove Warren as the personal representative of Harvey's estate, claiming that Warren acted improperly in dispensing estate funds to Jenise and Jerri. An evidentiary hearing was held on the motion. At the conclusion of the hearing, the probate court ruled that:

1. Jenise and Jerri were not proper heirs to Harvey's estate, as there was no proof they had been adopted by Harvey;

2. the six valid heirs to Harvey's estate are Warren, Harvey Jr., Ronnie, Barbara, Linda, and Peggy;

3. each heir was entitled to a share of the estate in the amount of $41,047.99 per heir;

4. $79,000 in estate funds held in Harkins' trust account should be paid $1,809.19 to Harkins and $77,190.81

---

1. To the best of our knowledge, Yogi Berra did not say this, but he probably should have.

2. Appellees did not file a response brief.

3. The facts critical to this appeal are undisputed and the following summary is taken primarily from the bankruptcy court's *Order* (the *"Appealed Order"*), in Appellant's App. at 25.

to Barbara, Linda, and Peggy ($25,-730.27 each); and

5. Warren was personally liable to Barbara, Linda, and Peggy in the amount of $15,317.72 each.[4]

On March 22, 2011, judgment was entered in favor of Barbara, Linda, and Peggy and against Warren in the amount of $45,953.16 (the "State Court Judgment"). The State Court Judgment is now final.

On May 2, 2011, Warren and his wife, Elizabeth, filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. On September 6, 2011, Barbara, Linda, and Peggy filed this adversary proceeding against Warren, asking the State Court Judgment not be discharged in Warren's bankruptcy case. Barbara, Linda, and Peggy alleged that Warren's payment of probate funds to Jenise and Jerri constituted "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4) of the United States Bankruptcy Code.[5]

The adversary proceeding was tried on September 19, 2012. At trial, Warren admitted that the distributions to Jenise and Jerri should not have been made. He argued that the State Court Judgment should be discharged because he lacked the intent to defraud, and because he acted in good faith on the advice of an attorney. At trial, Warren was unable to account for no less than $20,000 in estate funds distributed from Harvey's estate while he served as its personal representative.

On November 28, 2012, the bankruptcy court entered its order finding the State Court Judgment non-dischargeable under § 523(a)(4). The bankruptcy court held that a fiduciary relationship existed between Warren and Barbara, Linda, and Peggy by virtue of Warren's status as the personal representative of Harvey's estate, and went on to state that

> The sole issue before the Court is whether the Defendant committed "defalcation" during the course of the Defendant's fiduciary relationship within the meaning of § 523(a)(4). "Defalcation" is not defined in the Bankruptcy Code, but the Bankruptcy Appellate Panel of the Tenth Circuit held "defalcation" under § 523(a)(4) "is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to **any** breach of a fiduciary duty, whether intentional, wilful, reckless, or negligent. Furthermore, the fiduciary-debtor is charged with knowledge of the law and its duties." The *Storie* Court explained "[o]ur holding, **requiring no mental culpability on the part of the debtor fiduciary,** is in accord with the express language of section 523(a)(4)." The prevailing view is "defalcation" applies to conduct that does not reach the level of fraud, embezzlement, misappropriation or larceny. In addition, the general standard of liability in the District of Colorado is the failure of the fiduciary to account for entrusted money or property.
>
> . . . .
>
> Based on the evidence presented at trial, this Court is convinced the Defendant acted without any intent to breach his fiduciary duties as the personal representative of his father's estate. However, the Defendant's defense of innocent mistake for distributing funds to non-heirs cannot prevail because no mental culpability is required to find defalcation under § 523(a)(4).[6]

---

**4.** *Appealed Order* at 3, *in* Appellant's App. at 27.

**5.** 11 U.S.C. § 523(a)(4). Unless otherwise indicated, all future statutory references in text

are to the Bankruptcy Code, Title 11 of the United States Code.

**6.** *Appealed Order* at 6–7, *in* Appellant's App. at 30–31 (footnotes omitted).

The *Storie* decision referred to by the bankruptcy court is a prior decision of this court entitled *Antlers Roof–Truss & Builders Supply v. Storie (In re Storie).*[7] The linchpin of the *Storie* decision was the legal conclusion that a finding of "mental culpability" was not necessary to a determination of non-dischargeability under § 523(a)(4).

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from final orders, final collateral orders, and, with leave of court, interlocutory orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[8] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado, and have therefore consented to appellate review by this Court.

■■■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[9] The bankruptcy court's judgment of non-dischargeability disposed of the adversary proceeding in its entirety, and is thus a final order for purposes of appeal.[10]

## III. STANDARD OF REVIEW

■■■ The interpretation of a statute is a question of law that we review *de novo*.[11] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[12]

## IV. ANALYSIS

■■■ The determinative question is whether, in order for a debt to be non-dischargeable under § 523(a)(4), there must be a finding that the debtor/defendant possessed an intent to defraud or was guilty of some other manner of culpable conduct. Under *Storie,* the answer was no. At the time the bankruptcy court rendered its decision, *Storie* remained good law. However, on May 13, 2013, the United States Supreme Court decided *Bullock v. BankChampaign, N.A.*[13] In *Bullock,* the Supreme Court held that

Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). We here consider the scope of the term "defalcation." *We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.*[14]

The Supreme Court went on to state that

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or

---

7. 216 B.R. 283 (10th Cir. BAP 1997).

8. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

9. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

10. *Crossingham Trust v. Baines (In re Baines),* 528 F.3d 806, 809–10 (10th Cir.2008).

11. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

12. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

13. —— U.S. ——, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013).

14. *Id.* at 1757 (emphasis added).

other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. *Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.* ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.,* § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.,* § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").[15]

*Bullock* reverses *Storie.* After *Bullock,* in order to hold a debt non-dischargeable under § 523(a)(4), a bankruptcy court must find that the debtor acted with wrongful intent, or, at a minimum, with a conscious disregard of his or her fiduciary duties.

■ The bankruptcy court determined that Warren acted with no wrongful intent. However, the bankruptcy court found that Warren failed to properly account for approximately $20,000 in funds he distributed from Harvey's estate. The bankruptcy court also did not opine on whether Warren's claim of reliance upon the advice of legal counsel was supported by the facts of the case. On the record before us, we cannot determine whether Warren acted with a "conscious disregard" of his obligations to the proper heirs of Harvey's estate. The issue should be determined by the bankruptcy court on remand.[16]

## V. CONCLUSION

The standard of non-dischargeability under § 523(a)(4) applied by the bankruptcy court is no longer good law. Accordingly, the decision of the bankruptcy court is reversed. This adversary proceeding is remanded to the bankruptcy court so that it may consider this matter further in accordance with the principles set forth in *Bullock.*

---

15. *Id.* at 1759–60 (emphasis added).

16. We are not telling the bankruptcy court it must conduct further evidentiary hearings in this case. The record before us does not include a transcript of the trial below. We have no way of knowing whether additional hearings are necessary, or whether a decision may be made under the principles set forth in *Bullock* on the evidence adduced at trial. The matter is left to the sound discretion of the bankruptcy court.