NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4638
_____

In re:  Ronald W. Grigg,

Debtor

BLAINE JOHN CHANEY

v.

RONALD W. GRIGG,

Appellant

_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 3-13-cv-00292)
District Judge:  Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2015

Before:  FISHER, CHAGARES and JORDAN, *Circuit Judges*.

(Filed:  October 6, 2015)
_____

OPINION*
_____

_____

  * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Ronald Grigg, a Chapter 7 debtor, appeals the District Court's affirmance of orders of the Bankruptcy Court that resulted in over three million dollars of debt being declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Blaine Chaney is the creditor who holds this nondischargeable debt, which originated in a California state-court judgment and ancillary obligations of attorneys' fees, costs, and sanctions. We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Ronald Grigg ("Grigg"), a lawyer, represented Blaine Chaney ("Chaney") in matters related to Chaney's marital dissolution settlement. Grigg and Chaney entered into a contingency fee agreement and an hourly fee agreement, both of which contained arbitration clauses. Thereafter, Chaney and his former wife entered into a marital settlement agreement, and Chaney began receiving funds pursuant to that agreement in January 2006. Grigg paid himself approximately $2.2 million in fees from his client trust account. Later in 2006, Chaney filed suit against Grigg and his employee, Mary Whitman ("Whitman"), in the Los Angeles Superior Court, with Judge Aurelio Munoz presiding. Chaney's complaint in that action alleged various causes of action, but the essence of the

2

lawsuit was a dispute over the fees that Grigg had taken in connection with his representation of Chaney in the divorce matter.

In late 2006, Grigg brought a motion to compel arbitration and to stay litigation, which Judge Munoz granted. The case went to arbitration. In November 2008, the arbitrator issued a final arbitration award for $2,389,969.31 in favor of Chaney. Thereafter, Chaney filed a petition in the Los Angeles County Superior Court, Judge Michael Stern presiding, to confirm the arbitration award, and Grigg and Whitman filed a petition to vacate it. In March 2010, Judge Stern denied the motion of Grigg and Whitman, granted Chaney's motion to confirm the arbitration award, and ordered that Chaney recover from Grigg a sum of $3,030,085.45. In June 2010, Judge Stern granted Chaney's motion for a permanent injunction to aid enforcement of the judgment.[1]

Grigg appealed the judgment and the permanent injunction to the California Court of Appeal, which affirmed the judgment and awarded Chaney costs on appeal. Grigg did

---

[1] In part, the injunction required Grigg to turn over funds derived from Chaney and to provide an accounting to Chaney of all assets acquired by Grigg from Grigg's client trust account and the location of the funds. Grigg failed to comply, and, on September 16, 2011, he was found to be guilty of contempt of court. Grigg waived sentencing until December 7, 2011, which was then continued until January 9, 2012. Grigg was sentenced to three days in jail and fined $1000.

not appeal the Court of Appeal decision to the California Supreme Court, and the order became final on November 17, 2011.[2]

Grigg filed a voluntary Chapter 7 bankruptcy petition on December 5, 2011, in the Bankruptcy Court of the Western District of Pennsylvania. Chaney commenced an adversary proceeding in the bankruptcy court by filing a complaint to determine the dischargeability of debt in April 2012. Chaney's complaint asserted that the debt Grigg owed him should be nondischargeable on the basis of breach of fiduciary duty, defalcation, and fraud, pursuant to 11 U.S.C. § 523(a)(4).

The Bankruptcy Court found in Chaney's favor and held that the debt Grigg owed Chaney was nondischargeable. The Bankruptcy Court concluded that 11 U.S.C. § 523(a)(4) applied for the following reasons: Grigg owed Chaney a fiduciary duty as his lawyer; Grigg violated that duty; and Chaney suffered resulting economic loss. In reaching its conclusion that Grigg violated his fiduciary duty, the Bankruptcy Court concluded that, at the least, Grigg consciously disregarded "a substantial and unjustifiable risk" that his conduct would turn out to violate a fiduciary duty.[3] Grigg was, as the Bankruptcy Court explained, on notice by September 18, 2006 (the date of Chaney's state

---

[2] *See* Cal. Rules of Court, Rule 8.264(b)(1) ("[A] Court of Appeal decision in a civil appeal, including an order dismissing an appeal involuntarily, is final in that court 30 days after filing.").

[3] *See Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013) ("Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." (internal quotation marks omitted)).

court complaint), that his legal fees were being disputed. Rather than returning the fees to the client trust account (as he was obligated to under California law), Grigg continued to spend the disputed funds. Accordingly, the Bankruptcy Court found that Grigg had the state of mind required by *Bullock* and that therefore the debt owed Chaney fell within the exception set forth in 11 U.S.C. § 523(a)(4). The Bankruptcy Court also ruled in Chaney's favor on Grigg's counterclaims.

Grigg appealed the Bankruptcy Court's order on the summary judgment motions.[4] The District Court affirmed the Bankruptcy Court's order, and Grigg appealed to this Court.

II.

The Bankruptcy Court had jurisdiction over this matter pursuant to a Chapter 7 bankruptcy filed on December 5, 2011. The District Court had jurisdiction over the appeal from that decision under 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. § 158(d). In reviewing the orders of the Bankruptcy Court, we review factual findings for clear error and exercise plenary review over questions of law.[5] "In that sense, our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determination."[6]

---

[4] Grigg also submitted to the District Court a motion to withdraw the bankruptcy reference, which was denied.

[5] *In re Graves*, 33 F.3d 242, 246 (3d Cir. 1994).

[6] *Id.* (quoting *In re Brown,* 951 F.2d 564, 567 (3d Cir. 1991)).

III.

A debt may not be discharged in bankruptcy if the debtor committed "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[7] Defalcation may be shown in cases where the fiduciary engages in reckless conduct or "consciously disregards . . . a substantial or unjustifiable risk that his conduct will turn out to violate a fiduciary duty."[8] Furthermore, "[t]hat risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."[9]

The Bankruptcy Court found that the undisputed facts in this case permitted such a determination. The factual findings underlying that determination were not clearly erroneous, and the determination itself is sound. Chaney filed suit on September 18, 2006, disputing Grigg's fees and ultimately won that lawsuit. At arbitration, the arbitrator found that Grigg had billed Chaney "an extravagant sum supported by dubious hours" and that the contingent fee was "so exorbitant and wholly disproportionate to the services performed as to shock the conscience . . . ."[10] The Bankruptcy Court noted that Rule 4-100 of the Rules of Professional Conduct for the State of California provides that, when the right to funds in a client trust account is disputed, "the disputed portion shall not be

---

[7] 11 U.S.C. § 523(a)(4).
[8] *Bullock*, 133 S. Ct. at 1759 (internal quotation marks omitted).
[9] *Id.* at 1760 (internal quotation marks omitted).
[10] Appellee's App. 35–36.

withdrawn until the dispute is finally resolved."[11] Grigg, knowing that the fees were in dispute, continued to spend them. In fact, he spent $427,767 of the funds in dispute defending the lawsuit Chaney had filed against him to recover those very funds. Grigg also failed to comply with Judge Stern's order that he produce an accounting, which the Bankruptcy Court interpreted as conduct showing Grigg's knowing willfulness under § 523(a)(4).

The Bankruptcy Court provided a detailed analysis, which we need not further expound here, and concluded (correctly) that Grigg acted in violation of his fiduciary capacity with the state of mind required by *Bullock*. Accordingly, Grigg's debt to Chaney is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

The Bankruptcy Court also found that ancillary obligations—court-ordered attorneys' fees and costs awarded in conjunction with the contempt proceeding, as well as sanctions and costs against Grigg—were nondischargeable because they were incurred in connection with a nondischargeable debt, the judgment.[12] We agree with the Bankruptcy Court's reasoning: but for Grigg's conduct, Chaney would not have incurred attorneys' fees, and the sanctions and costs would not have been imposed. The ancillary obligations are therefore, as the Bankruptcy Court explained, nondischargeable.

---

[11] *Id.* at 89 (quoting Cal. Rules of Prof'l Conduct, rule 4-100(A)(2)).
[12] *See, e.g., Matter of Gober*, 100 F.3d 1195, 1208 (5th Cir. 1996) (holding that "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt"); *Klingman v. Levinson*, 831 F.2d 1292, 1296–97 (7th Cir. 1987).

7

The Bankruptcy Court also properly granted summary judgment to Chaney on Grigg's counterclaims. Grigg's counterclaims sought, among other things, to have the Bankruptcy Court vacate unspecified prior orders of the California courts, but the Bankruptcy Court explained that it was prohibited from doing so by the *Rooker-Feldman* doctrine.[13] "*Rooker* and *Feldman* established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments . . . ."[14] We have explained that, for the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[15] The Bankruptcy Court appropriately found that all four elements had been met in this case. In particular, Grigg's argument that prong three was not met is unpersuasive because the California Court of Appeal's order became final on November 17, 2011, before Grigg's bankruptcy was filed.

Grigg also alleged that the contempt judgment entered on January 12, 2012, violated the automatic stay provision of 11 U.S.C. § 362. The basis of this argument is

---

[13] The doctrine takes its name from two cases: *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

[14] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).

[15] *Id.* at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (alterations omitted).

that Grigg's sentencing for contempt was scheduled for December 7, 2011, and Grigg filed for bankruptcy two days earlier on December 5, 2011. Judge Ongkeko of the Superior Court for the State of California made clear, however, that he was sentencing Grigg with punitive sanctions to uphold the dignity of the court and not as an effort to enforce the collection of a judgment. In any case, the Bankruptcy Court determined that this counterclaim was barred by the principles of res judicata and collateral estoppel because the issue of the alleged stay violation was raised in the contempt proceeding and a final decision was rendered.

Finally, Grigg alleged that additional fees should have been turned over to him pursuant to 11 U.S.C. § 542. The Bankruptcy Court noted that the Final Arbitration Award determined that no further fees were to be awarded to Grigg, and held that this matter too was precluded by collateral estoppel and res judicata. The Bankruptcy Court further explained that, had the claim not been so barred, Grigg would nevertheless have lacked standing to pursue a turnover of estate property pursuant to 11 U.S.C. § 542.[16]

IV.

We will affirm the District Court's order entered on November 10, 2014, which affirmed the orders of the Bankruptcy Court.

---

[16] Grigg has articulated a number of other arguments on appeal that tend to obscure rather than clarify the actual issues in this case. We have considered these contentions but need not address them here. The Bankruptcy Court's orders were correctly decided, as was the District Court's order affirming them.