**IN RE: Jefferson JUERAKHAN, Debtor.**

**Robert Wilcox, Plaintiff,**

v.

**Jefferson Juerakhan, Defendant.**

**Case No. 8:14–bk–15119–MGW
Adv. No. 8:15–ap–00702–MGW**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Signed February 4, 2016.

---

**23.** Doc. No. 18.

712

G. Steven Fender, Esq., Greenspoon Marder, P.A., Counsel for Plaintiff

Benjamin G. Martin, Esq., Law Offices of Benjamin Martin, Counsel for Debtor/Defendant

1. *See* Adv. Doc. No. 8, Ex. A.

2. Wilcox does not seek the return of the $12,350 check because this amount represents the 10% premium Wesh was entitled to

## MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Michael G. Williamson, Chief United States Bankruptcy Judge

To prevail on a claim under Bankruptcy Code § 523(a)(4), a creditor must prove that the debtor committed (1) fraud or defalcation while acting in a fiduciary capacity: (2) embezzlement; or (3) larceny. Here, Robert Wilcox, who had a $159,100 claim against Jefferson Juerakhan, the Debtor in this case, asserts Juerakhan mishandled and ultimately refused to account for or pay back a total of $159,100 of Wilcox's money held by Juerakhan in a fiduciary capacity as a licensed bail bond agent. Because the undisputed facts demonstrate Juerakhan was entrusted with Wilcox's money as a statutory fiduciary but intentionally failed to return it to him, Wilcox is entitled to judgment as a matter of law on his § 523(a)(4) claim.

### Undisputed Facts

Juerakhan is a bail bond agent licensed under chapter 648, *Florida Statutes,* and the sole shareholder of Wesh Bail Bonds, Inc. ("Wesh"). In 2013, Wilcox's son was arrested on a number of criminal charges in Manatee and Pinellas Counties requiring the posting of various bail bonds as a condition of release. Wilcox engaged Juerakhan to arrange for his son's bail bonds. To that end, Wilcox delivered five cashier's checks to Juerakhan payable to Wesh as follows: [1] $12,350 on June 5, 2013; [2] $100,000 on June 7, 2013; $52,000 on July 17, 2013; $10,000 on July 18, 2013; and $600 on July 18, 2013.

for posting bail bonds on behalf of Wilcox's son. The $12,350 is not included in the $159,100 Wilcox seeks to recover.

The $100,000 check was intended as collateral for a bond in the amount of $100,013. Through his insurer, Sun Surety Insurance Company ("Sun Surety"), Juerakhan delivered a surety bond in the amount of $100,013 to the State of Florida for the release of Wilcox's son. Juerakhan then deposited Wilcox's $100,000 cashier's check into Wesh's operating account.

Wilcox's son initially failed to appear as required under the bond, threatening the forfeiture of the $100,013 bond. Wilcox's son, however, did appear before any actual forfeiture occurred, and the bond was returned to Sun Surety. At that time, Juerakhan was statutorily required to return the $100,000 to Wilcox, but Juerakhan instead kept the $100,000 collateral and used it over several months to pay Wesh's bills.

The checks in the amount of $52,000,[3] $10,000, and $600 were also paid by Wilcox to Juerakhan to be used for his son's bail bonds. The funds from these checks, however, were never used as collateral for any bail bond or in relation to any bail bond. Rather, Juerakhan used these monies for his personal use and to pay Wesh's bills.

Wilcox demanded return of the sums paid for his son's bail bonds. Juerakhan refused. So Wilcox sued him in state court seeking recovery under theories of replevin and conversion. Before entry of a default judgment, Juerakhan filed for bankruptcy relief. To date, Juerakhan has not returned any of the $159,100 owed to Wilcox.

Wilcox filed this complaint seeking to have the amounts Juerakhan owes him determined to be nondischargeable under Bankruptcy Code § 523(a)(4).[4] According to Wilcox, Juerakhan misappropriated and refused to return Wilcox's money while acting in his official capacity as a bail bond agent. Wilcox now seeks summary judgment on his § 523(a)(4) claim.[5]

### Conclusions of Law [6]

Bankruptcy Code § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." [7] This section is divided into two disjunctive sections—the first deals with fraud or defalcation while acting in a fiduciary capacity, and the second deals with embezzlement or larceny even when not acting in a fiduciary capacity.[8]

■ With respect to the nondischargeability of a debt based upon defalcation by a fiduciary, Wilcox must first establish Juerakhan's duty as a fiduciary. Although the existence of fiduciary capacity under § 523(a)(4) is determined by federal law, state law is relevant to the inquiry.[9] So the Court turns to the applicable Florida Statutes to determine Juerakhan's duties as a state licensed bail bond agent.

A bond for which fees or premiums are charged for the release of a criminal defendant must be executed by a bail bond agent licensed pursuant to chapter 648,

---

3. Juerakhan returned $3,500 of the proceeds of the $52,000 check to Wilcox to use as a retainer for a criminal defense lawyer for Wilcox's son. So Wilcox only asserts a $48,500 indebtedness with respect to the $52,000 cashier's check.

4. Adv. Doc. No. 1.

5. Adv. Doc. No. 8.

6. The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a

core proceeding under 28 U.S.C. § 157(b)(2)(K) & (O).

7. 11 U.S.C. § 523(a)(4).

8. *See In re Hosey*, 355 B.R. 311, 321 (Bankr. N.D.Ala.2006).

9. *McDowell v. Stein*, 415 B.R. 584, 594 (S.D.Fla.2009).

*Florida Statutes.*[10] Only an individual may be issued such a license. "A firm, partnership, association, or corporation, as such, may not be licensed."[11] All funds received by a licensed bail bond agent in transactions under his or her license are "trust funds received by the licensee in a fiduciary capacity, and the licensee must account for and pay the same to the insurer, insured, or other person entitled to such funds."[12]

■ There is no question under Florida that only an individual may be a bail bond agent and that a bail bond agent is a statutory fiduciary. There is likewise no question that Juerakhan was a bail bond agent. Accordingly, Juerakhan is a fiduciary under § 523(a)(4) as a matter of law. The only remaining question is whether he committed a fraud or defalcation while acting in his fiduciary capacity.

The Supreme Court recently explored the meaning of "defalcation" in *Bullock v. BankChampaign.*[13] There, the Court explained that the statutory term "defalcation" should be treated similar to Justice Harlan's 1878 interpretation of "fraud" under the Bankruptcy Code, which required moral turpitude or an intentional wrong:

> [D]ebts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or

fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.[14]

■ An intentional wrong, within the statutory meaning of "defalcation," includes conduct that the fiduciary knows is improper, as well as reckless conduct of the kind that criminal law treats as the equivalent.[15]

Juerakhan's conduct in this case constituted a crime under Florida law. Florida law requires a bail bond agent to return collateral to the indemnitor within 21 days after the discharge is provided.[16] Any bail bond agent who unlawfully diverts or appropriates funds for his or her own use commits larceny by embezzlement, punishable as provided by law.[17] Further, a bail bond agent who accepts anything of value from a principal for providing a bail bond other than an authorized premium or transfer fee or who deducts any fees, expenses, or charges of any kind from the collateral held or any return premium due commits a third degree felony.[18] In short, it is a crime in Florida for a bail bond agent to (1) fail to unconditionally return collateral within 21 days of a bond being discharged; (2) unlawfully divert or appropriate funds for his or her own use; and (3) accept anything of value from a principal for providing a bail bond other than an authorized premium or transfer fee.

---

10. § 648.24, Fla. Stat.

11. § 648.27(1), Fla. Stat.

12. § 648.295(1), Fla. Stat.

13. —— U.S. ——, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2015).

14. 133 S.Ct. at 1759 (quoting *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878)).

15. *Id.*

16. § 648.571(1), Fla. Stat.

17. § 648.295(3), Fla. Stat.

18. §§ 648.44(1)(j), (9)(a), Fla. Stat.

Here, Juerakhan failed to return Wilcox's collateral after the bond was discharged but instead diverted the funds to his own use. It is undisputed that he kept the $100,000 in collateral in Wesh's operating account and proceeded to use the funds over several months to pay Wesh's bills. Similarly, Juerakhan was never entitled to use the $52,000, $10,000, or $600 checks entrusted to him as a bail bond agent for his personal use or Wesh's business purposes. To the extent Juerakhan claims the $52,000 he received was not for procuring a bail bond but rather for helping Wilcox's son obtain a lawyer who could get him out of jail, then Juerakhan accepted something of value from Wilcox other than a premium or transfer fee.[19] Regardless of how Juerakhan characterizes his conduct, there is no dispute it violated Florida law.

Juerakhan is charged with knowledge of the law that provides for his licensure as a bail bond agent. As such, he knew he was not entitled to these monies and that they should have been returned to Wilcox. Juerakhan's willful withholding of these funds is analogous to the debtor's actions in *In re Quaif*, where the Eleventh Circuit held that the debtor's intentional transfer of funds from an insurance premium common account to the debtor's operating and payroll account was "far more than an innocent mistake or even negligence" and that the failure to remit those funds to the insurer constituted a defalcation within the meaning of § 523(a)(4).[20]

## Conclusion

It is undisputed that Juerakhan accepted $159,100 from Wilcox as a bail bond agent and diverted those funds for personal and business expenses rather than returning them to Wilcox upon demand. Those acts establish Juerakhan committed a defalcation while acting in a fiduciary capacity. Accordingly, Wilcox is entitled to judgment as a matter of law on his § 523(a)(4) claim.

Accordingly it is,

**ORDERED:**

1. Wilcox's summary judgment motion[21] is GRANTED.

2. Wilcox is entitled to judgment as a matter of law on Count II of his complaint. The Court will enter a separate final judgment in favor of Wilcox finding Juerakhan liable for the $159,100 that was not returned to him and determining that the $159,100 final judgment is nondischargeable.

3. Upon entry of the final judgment in his favor, Wilcox's remaining claims under §§ 523(a)(2) and (a)(6) will be moot. So the Court will dismiss those claims without prejudice and direct the Clerk of Court to close this proceeding upon entry of the final judgment in Wilcox's favor.

19. While Juerakhan does not dispute he received the $100,000 as collateral for a bail bond, he does dispute that he received the $52,000 payment in that capacity. According to Juerakhan, Wilcox paid him $52,000 to procure a lawyer to help his son get out of jail. Juerakhan claims he refunded Wilcox $3,500 from the $52,000 so he could pay a retainer to the lawyer Juerakhan recommended. Juerakhan claims he is entitled to the remainder as some sort of finder's fee.

20. *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 954–55 (11th Cir.1993).

21. Doc. No. 8.