

FILED

JUL 18 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>WALLACE STEFFEN,<br>　　　　　　Debtor. | BAP No. CC-22-1240-SFL<br><br>Bk. No. 8:18-bk-14425-SC |
| WALLACE STEFFEN,<br>　　　　　　Appellant,<br>v.<br>LINDA STEFFEN,<br>　　　　　　Appellee. | Adv. No. 8:19-ap-01107-SC<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Wallace Steffen appeals from the bankruptcy

court's judgment excepting from discharge under § 523(a)(4) his debt to

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Linda Steffen arising from his conduct while serving as successor trustee of his deceased father's trust. The bankruptcy court granted summary judgment based on the findings of fact and conclusions of law set forth in the Ohio Probate Court's final decision holding Mr. Steffen liable for breach of trust. On appeal, Mr. Steffen only challenges the preclusive effect of the Probate Court's state of mind findings. Mr. Steffen claims that he should have been given the opportunity to present evidence that he had relied on the advice of his trust counsel to negate any finding that he harbored a culpable mental state. However, Mr. Steffen's mental state was actually litigated in the Probate Court and necessary to the imposition of his liability. He cannot collaterally attack the Probate Court's intent findings now by presenting evidence in the bankruptcy court that he relied on advice of counsel.

Accordingly, we AFFIRM.

## FACTS[2]

Ms. Steffen and Mr. Steffen are siblings. Their father, Wallace Steffen Sr., established a revocable living trust in 2004 ("Trust"). Upon the father's death, the Trust's assets were to be equally distributed between the siblings. As of June 2010, the father was incapacitated by dementia until his passing in March 2015. Mr. Steffen served as the successor trustee under

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

the Trust from June 2010 through at least February 2018. During his tenure as trustee, Mr. Steffen engaged in numerous transactions involving the Trust's assets for his own benefit. This ultimately led to Ms. Steffen suing Mr. Steffen in the Ohio Probate Court in June 2015 for breach of trust and avoidance of loans he made to himself while serving as trustee.

## A.    Trial in the Ohio Probate Court.

Ms. Steffen alleged that Mr. Steffen failed to account for the Trust's assets and after becoming trustee moved into his father's house, which was property of the Trust, without paying rent. But of greater concern were the loans Mr. Steffen made to himself while serving as trustee. According to Ms. Steffen, prior to their father's incapacitation, Mr. Steffen borrowed roughly $90,000. After becoming the successor trustee, Mr. Steffen borrowed no less than another $250,000. By way of her complaint, Ms. Steffen sought an accounting, avoidance of all the loans, distribution to herself of all remaining assets, and recovery of her attorney fees and costs in pursuing the Probate Court action.

After a three-day bench trial in December 2016, the Probate Court rendered an interlocutory judgment in the form of a twenty-page "Journal Entry" in favor of Ms. Steffen and against Mr. Steffen for $165,174.52, plus interest. The Probate Court reserved the issue of Ms. Steffen's attorney fees and costs for further hearing. The Probate Court held that Mr. Steffen became indebted to the trust for $550,898.05 as a result of his transactions involving the Trust's assets. The court then offset the value of the

remaining assets awarded solely to Ms. Steffen against Mr. Steffen's debt. This left a deficiency balance of $165,174.52 that Mr. Steffen needed to pay Ms. Steffen in order to complete "her proper Trust Share."

The Probate Court rendered numerous findings of fact and conclusions law in support of Mr. Steffen's liability. Relevant to Ms. Steffen's challenge to the dischargeability of the debt, the Probate Court determined:

> 1) [Mr. Steffen's] Pre-2013 Self-Transfers were transactions not in the best interest of [his father], and therefore violated Sections 3.2 and 9.1 of the Trust Agreement.

> 2) [Mr. Steffen's] Pre-2013 Self-Transfers were transactions not in accordance with the purpose of the Trust, or the interests of [his father], and therefore violated [Mr. Steffen's] duty to administer the Trust in accordance with its purpose, under R.C. 5808.01.

> 3) [Mr. Steffen's] Pre-2013 Self-Transfers were transactions not in the interest of [his father], and therefore violated [Mr. Steffen's] duty to administer the Trust solely in the interest of the beneficiary under R.C. 5808.02.

> 4) Through his various distributions of Trust property after [his father's] death, [Mr. Steffen] failed to act impartially in the management and distribution of Trust property, and therefore violated his duty of impartiality to [Ms. Steffen] under R.C. 5808.03.

More importantly for our purposes, the Trust included an "exoneration clause" that absolved the trustee from personal liability for

4

actions taken while serving as trustee "if the actions (or inactions) of the Trustee are taken in good faith, and without gross negligence or willful misconduct." The record does not include transcripts from the trial in the Probate Court. Yet, the Journal Entry recognized the significance of the exoneration clause and addressed it when considering whether Mr. Steffen was liable to Ms. Steffen. Based on the evidence presented at trial, the Probate Court found that Mr. Steffen could "not limit [his] liability . . . because [his] pre-2013 Self-Transfers, as well as his conduct after [his] father's] death, was not mere negligence, but rather, constituted bad faith, gross negligence, willful misconduct and reckless indifference to the purposes of the Trust and . . . interests of [his father] and [Ms. Steffen]." The court further found that Mr. Steffen's actions "constituted an intentional pattern of self-dealing over several years in contravention of the purposes of the Trust and the interests of [his father] and [Ms. Steffen], as well as a negligent mismanagement of the whole Trust." This led the Probate Court to conclude that:

> The forgoing indebtedness owed by [Mr. Steffen] to the Trust [the entire $550,898.05 Mr. Steffen owed the trust—before offsetting the remaining trust assets solely awarded to Ms. Steffen] arises from his failure to meet his obligations, including financial obligations, to the Trust while serving in a fiduciary capacity; the misappropriation of trust funds or money while held in a fiduciary capacity; and his failure to properly account for such funds. [Mr. Steffen] knew that his conduct as a fiduciary was improper, or he consciously disregarded or was willfully blind to a substantial risk that his conduct would turn out to violate his fiduciary duties, and this risk was a gross

5

deviation from the standard of conduct that a law-abiding person would observe under the circumstances.

## B.    Mr. Steffen's bankruptcy and the adversary proceeding.

At the time Mr. Steffen commenced his chapter 7 bankruptcy in December 2018, the Probate Court's Journal Entry was still interlocutory—awaiting the award of fees and costs to Ms. Steffen. In May 2019, the bankruptcy court granted relief from stay to permit the parties to complete the Probate Court litigation. The Probate Court entered final judgment in March 2020 granting Ms. Steffen fees of $209,502 and costs of $3,198.83. Mr. Steffen then appealed the final judgment, but the Ohio Court of Appeals affirmed on procedural grounds.

In the meantime, in June 2019, Ms. Steffen commenced her nondischargeability action under § 523(a)(4), while the Probate Court action was still pending. In April 2020, just after the Probate Court's entry of final judgment, Ms. Steffen moved for summary judgment. Based on the parties' agreement, the bankruptcy court held the adversary proceeding and Ms. Steffen's summary judgment motion in abeyance pending the exhaustion of all appeals arising from the Probate Court action.

Ms. Steffen's adversary complaint stated two claims for relief under § 523(a)(4)—one for fiduciary defalcation and the other for embezzlement. But she sought summary judgment only on the fiduciary defalcation claim. In her summary judgment motion, she pointed out that Mr. Steffen admitted in his answer that the Trust was an express trust and that "at all

6

times relevant . . . [Mr. Steffen] acted in a fiduciary capacity as successor trustee of the Trust." As Ms. Steffen explained, the only disputed issue was whether Mr. Steffen committed defalcation while serving as successor trustee of the Trust. According to her, the issue preclusive effect of the Probate Court judgment conclusively established Mr. Steffen's fiduciary defalcation within the meaning of § 523(a)(4). She further posited that the entire judgment amount the Probate Court awarded arose from Mr. Steffen's fiduciary defalcation, so the entire amount of the judgment debt was nondischargeable, per *Cohen v. de la Cruz*, 523 U.S. 213, 219–21 (1998).

Mr. Steffen raised several arguments in opposition to the summary judgment motion, but on appeal he exclusively challenges the requisite state of mind for fiduciary defalcation under § 523(a)(4). He contended that he could not have harbored the required intent or reckless disregard as articulated in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013), because he acted under the advice of counsel. Mr. Steffen acknowledged in his summary judgment opposition that the Probate Court made some intent findings. He even admitted that "[w]ithout more," the Probate Court's intent findings "would seemingly provide the intent element under 11 U.S.C. Sec. 523(a)(4)." But he reasoned that issue preclusion could not be applied to the intent issue because nothing in the Journal Entry specifically addressed or rejected his advice of counsel allegations.

At the hearing on the summary judgment motion, Mr. Steffen refined

his advice of counsel argument. He stated that there was no evidence in the record that his reliance on the advice of his trust counsel was addressed at all in the Probate Court. He insisted that he was entitled to have it addressed for the first time in the bankruptcy court as an affirmative defense to the nondischargeability action. He also posited that issue preclusion should not apply because the mental states required for liability under the Trust and for nondischargeability under § 523(a)(4) were not exactly the same.

The bankruptcy court ruled that the issue of Mr. Steffen's intent was necessary to the Probate Court's decision. As the court explained, the Trust's exoneration clause freed him from liability unless he acted intentionally and knowing that his acts or omissions constituted a breach of trust. Or, alternately, to be liable despite the exoneration clause, his acts or omissions had to be in reckless disregard of his duties under the Trust. As the bankruptcy court noted, the Probate Court held that the exoneration clause did not apply because of Mr. Steffen's mental state. In other words, the bankruptcy court determined that the Probate Court's state of mind findings conclusively established that Mr. Steffen harbored the requisite culpable mental state for fiduciary defalcation under § 523(a)(4).

The bankruptcy court rejected the argument that because the Probate Court's Journal Entry did not specifically address Mr. Steffen's advice of counsel allegations, there could be no issue preclusion regarding the issue of his state of mind. According to the bankruptcy court, Mr. Steffen could

have presented his advice of counsel evidence as part of the Probate Court proceedings. Having failed to do so, however, he could not collaterally attack the Probate Court's judgment by asserting new evidence to negate the Probate Court's intent findings. Alternately, the bankruptcy court ruled that Mr. Steffen failed to present any evidence demonstrating a genuine issue of material fact regarding his reliance on the advice of his counsel.

The bankruptcy court entered summary judgment against Mr. Steffen on the fiduciary defalcation claim on November 29, 2022. Mr. Steffen timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Whether the bankruptcy court correctly determined that the issue preclusive effect of the Probate Court's intent findings barred Mr. Steffen from litigating in the bankruptcy court whether he acted in reliance on the advice of counsel.

2.     Whether the bankruptcy court abused its discretion when it denied the request Mr. Steffen made in his summary judgment opposition for additional time to conduct discovery.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th

Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review an issue under the de novo standard of review, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

We review the bankruptcy court's denial of further discovery before granting summary judgment for an abuse of discretion. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011) (citing *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir.1989)), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Mr. Steffen specifically and distinctly makes only two arguments. He contends that the bankruptcy court incorrectly applied issue preclusion to bar his advice of counsel defense for his fiduciary defalcation because there was no evidence that the defense was tried or resolved by the Probate Court. Mr. Steffen's second argument also concerns his advice of counsel defense. He maintains that the bankruptcy court should have continued the summary judgment proceeding so that he could conduct discovery on his

10

advice of counsel defense.

## A. Summary judgment and issue preclusion standards.

Under Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056, the court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine if, on the record presented, a reasonable trier of fact could find in favor of the non-moving party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). A fact is material if it might affect the outcome of the case. *Id.* Once the moving party has met its initial burden, the non-moving party must show specific facts establishing the existence of genuine issues of fact for trial. *Anderson*, 477 U.S. at 256.

Under full faith and credit principles, *see* 28 U.S.C. § 1738, we must give the Probate Court judgment the same preclusive effect Ohio courts would. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999); *see also Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274, 281 (9th Cir. BAP 2013) (same articulation of full faith and credit principles under Ninth Circuit law). Courts in Ohio consider four factors before deciding whether a prior judgment should be given issue preclusive effect:

> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in

the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. BAP 2002) (quoting *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (6th Cir. BAP 2000)).

**B.     The Probate Court's decision established damages for defalcation while acting in a fiduciary capacity under § 523(a)(4).**

To prove a claim for relief for fiduciary defalcation under § 523(a)(4), a plaintiff must allege and demonstrate that (1) there was an express trust; (2) a debt arose from the debtor's defalcation; and (3) the debtor was acting as a fiduciary to the creditor at the time the debt arose. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013). Whether Mr. Steffen was acting as a fiduciary within the meaning of § 523(a)(4) and whether his actions qualify as a defalcation are determined by federal law. *Newman v. Lee (In re Newman)*, 2022 WL 2100905, at *5 (9th Cir. BAP June 10, 2022) (citing *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (9th Cir. BAP 2013)).

A defendant qualifies as a fiduciary within the meaning of § 523(a)(4) when his or her fiduciary duties arise "from an express or technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt . . . ." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378-79 (9th Cir. BAP 2011). Defalcation under § 523(a)(4) typically occurs when the defendant trustee knows that his or her conduct is improper or

12

"consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Bullock*, 569 U.S. at 274 (internal quotation marks omitted).

The Probate Court actually, directly, and necessarily determined that Mr. Steffen breached his fiduciary duties while acting as trustee of his father's trust. Consequently, the court held him liable for $165,174.52 and subsequently awarded Ms. Steffen attorney fees and costs. The Probate Court's findings conclusively establish the existence of an express trust. Mr. Steffen does not challenge the preclusive effect of this finding.

Ms. Steffen's claims for breach of trust did not depend on a culpable state of mind and would not, by themselves, support nondischargeability for defalcation under § 523(a)(4). But the Probate Court was required to decide whether the exoneration clause in the Trust freed Mr. Steffen from the liability otherwise arising from his breach of the Trust. The Journal Entry details the Probate Court's finding that Mr. Steffen either knowingly breached his fiduciary duties or was willfully blind to the substantial risk that his conduct violated his fiduciary duties. Based on his culpable state of mind, the Probate Court held that the exoneration clause did not apply, and Mr. Steffen was liable to Ms. Steffen for his breaches of his fiduciary duties. The Probate Court's findings are almost a verbatim quote of the state of mind required for § 523(a)(4) fiduciary defalcation. *See Bullock*, 569 U.S. at 273–74. On appeal, Mr. Steffen does not challenge that the parties actually, directly, and necessarily litigated his state of mind as part of Ms.

Steffen's claims.

As to the third requirement for fiduciary defalcation under § 523(a)(4), Mr. Steffen argued in his summary judgment opposition that the Probate Court did not determine that he was acting as a fiduciary for Ms. Steffen (rather than, or in addition to, the father) at the time of his defalcation. Mr. Steffen did not specifically and distinctly make this argument in his opening appeal brief. He mentioned it in passing in his summary of argument, but he never developed the issue.[3] Consequently, he has forfeited this argument. *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

Even if we were to attempt to address this argument, the Probate Court unequivocally found Mr. Steffen liable to Ms. Steffen for breach of his fiduciary duties—both before and after their father passed away. The Probate Court's conclusions of law referenced multiple fiduciary duties that Mr. Steffen owed but violated.[4] It neither stated nor suggested any

---

[3] According to Mr. Steffen's counsel at oral argument, the discussion of his fiduciary duty to Ms. Steffen in his opening brief is limited to a single statement that the bankruptcy court erred "when it concluded that Wallace's denial that he owed Linda a fiduciary duty during the relevant period had been both litigated and decided . . . based solely on a finding which said Linda had interests which were affected but not that Wallace had a duty to protect those interests."

[4] The Probate Court cited multiple provisions of R.C. § 5808.01, et seq. that Mr. Steffen violated. Those provisions codify "the long and ancient basic common law of fiduciary duty." *Bryan v. Chytil*, 2021 WL 5356205, *11 (Ohio Ct. App. Nov. 10, 2021) (quoting Daniel R. Griffith, *Directed Trusts and Administrative Trustees: Not Your Grandfather's Fiduciary*, 23 No. 6 Ohio Prob. L.J. NL 5 (July/Aug. 2013)).

other grounds for holding Mr. Steffen liable to Ms. Steffen other than the breach of his fiduciary duties.[5] Thus, Mr. Steffen's bald claim that he owed no fiduciary duty to Ms. Steffen is wholly at odds with the Probate Court's decision. Without the development of any factual or legal reasoning, Mr. Steffen has not demonstrated that the bankruptcy court erred in finding a nondischargeable fiduciary defalcation under § 523(a)(4).

In sum, the Probate Court held Mr. Steffen liable to Ms. Steffen for damages that arose from the debtor's defalcation while acting as a fiduciary to an express trust. The Probate Court entered its judgment after the same parties actually and directly litigated the identical issues on the merits resulting in a final judgment. Under Ohio law, the bankruptcy court properly recognized that Mr. Steffen was precluded from relitigating these issues in the adversary proceeding to except the judgment from discharge

---

[5] We are aware of R.C. § 5806.03, which provides in relevant part: "During the lifetime of the settlor of a revocable trust, whether or not the settlor has capacity to revoke the trust, the rights of the beneficiaries are subject to the control of the settlor, and the duties of the trustee . . . are owed exclusively to the settlor." Yet, the Probate Court's judgment is final and entitled to full faith and credit by the bankruptcy court. Moreover, it appears to be consistent with Ohio law. *See Cartwright v. Batner*, 15 N.E.3d 401, 404-05, 415 (Ohio Ct. App. 2014) (plaintiff beneficiary of a formerly revocable trust permitted to sue the defendant trustee after the settlor died for breach of fiduciary duties associated with the trustee's misuse of a power of attorney during the lifetime of the settlor); *see generally* Alan Newman, George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 964 (3d ed. 2010) ("[M]any courts have allowed other beneficiaries to pursue breach of duty claims after the settlor's death, related to the administration of the trust during the settlor's lifetime, when, for example, there are allegations that the trustee breached its duty during the settlor's lifetime and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct.").

under § 523(a)(4).[6]

## C.    Mr. Steffen cannot relitigate his liability to provide new evidence that he relied on advice of counsel.

Mr. Steffen argues that his advice of counsel allegations are not barred by issue preclusion because the issue was not actually litigated in the Probate Court. He contends that issue preclusion "does not apply to issues which could have been litigated in that proceeding but were not." This argument belies a fundamental misunderstanding of the relevant issue precluded and the nature of his "defense." The Probate Court's final judgment precludes relitigation of Mr. Steffen's culpable state of mind. That issue was actually, directly, and necessarily decided to impose liability on Mr. Steffen for his breaches of fiduciary duty while acting as trustee. It is simply too late to advance a new argument concerning his state of mind under the guise of litigating the defalcation necessary to

---

[6] Mr. Steffen also argues that the bankruptcy court erred by applying claim preclusion rather than issue preclusion. This argument is based on two isolated statements made by the bankruptcy court. The court, quoting *Italiano v. Commercial Financial Corp.*, 772 N.E.2d 1215, 1220 (Ohio Ct. App. 2022), stated: "Moreover, issue preclusion 'is applicable to defenses which, although not raised, could have been raised in the prior action.' Accordingly, if a defendant previously neglected to assert the defense, he is precluded from raising it subsequently by virtue of the existence of the judgment rendered in the former action." However, the Ohio court was specifically referring to claim preclusion. In the next paragraph, the bankruptcy court made a similar statement. Regardless, these isolated comments are immaterial to our analysis and decision which concludes that (1) the relevant issue was Mr. Steffen's state of mind – not advice of counsel, and (2) advice of counsel is not a complete defense to either a federal fiduciary defalcation action under § 523(a)(4) or an Ohio breach of trust cause of action.

prove Ms. Steffen's claim for nondischargeability under § 523(a)(4).

Moreover, Mr. Steffen miscomprehends the nature of his argument. He refers to his alleged reliance on the advice of counsel as a defense to his culpable mental state. But reliance on counsel is not usually an absolute bar to liability on claims requiring scienter. In most instances, "counsel's advice is merely evidence to be considered in appraising the client's state of mind." Restatement (Third) Law Governing Lawyers § 29, cmt. c (2000) (citations omitted). While advice of counsel may well have been probative in determining the application of the exoneration clause, Mr. Steffens cannot relitigate his mental state within the nondischargeability action.

The law governing objection to discharge actions supports this distinction. The Ninth Circuit has stated that advice of counsel is not recognized as an affirmative defense in the objection to discharge context. *Maring v. PG Alaska Crab Inv. Co. (In re Maring)*, 338 F. App'x 655, 658 (9th Cir. 2009) (citing *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961)). (applying § 727(a)(4)). Even so, in determining whether a debtor harbored the culpable mental state required to deny the discharge, the debtor's reliance on the advice of counsel may be a significant factor. *See First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986) (citing *Hultman v. Tevis*, 82 F.2d 940, 941 (9th Cir. 1936)) (applying § 727(a)(2)(A)). But when a debtor has admitted or already has been found to have acted with the requisite culpable state of mind, allegations of reliance on the advice of counsel cannot help the debtor. They do not negate the admitted

or previously determined scienter. *Id.* As *Adeeb* aptly explained:

> In this case, the bankruptcy court found that both Cooper and Adeeb "knew that the purpose of the transfers was to hinder or delay creditors of the debtor." Such a finding precludes the defense of good faith reliance on the advice of an attorney even if the client is otherwise innocent of any improper purpose.

*Id. Accord, Rawson v. Cain (In re Rawson)*, 734 F. App'x 507, 509 (9th Cir. 2018); *see also Sachs v. Adeli (In re Adeli)*, 2009 WL 7809009, at *10 (9th Cir. BAP Mar. 24, 2009) ("[B]ecause Adeli admitted that both she and her New York counsel knew the purpose of the transfers was to protect her assets from Sachs and hinder or delay his collection efforts, she cannot assert the advice of counsel defense to negate her intent under section 727(a)(2)(A)"), *aff'd*, 384 F. App'x 599 (9th Cir. 2010).[7]

In the context of both § 523(a)(4) and (6), this Panel has upheld

---

[7] Similarly, we have not found any Ohio authority suggesting that advice of counsel is a complete defense to a breach of trust claim. To the contrary, Ohio case law indicates that it is not. *See In re Butler's Est.*, 28 N.E. 2d 186, 191 (Ohio 1940) ("[T]he advice of counsel cannot be a complete shield for the action of a trustee or a fiduciary."); *see also In re Guardianship of McPheter*, 642 N.E.2d 690, 695 (Ohio Ct. App 1994) (following *In re Butler's Estate*). In Ohio, reliance on advice of counsel can be presented to show that the defendant acted with reasonable prudence, or to negate an inference that the defendant harbored a culpable mental state. *See, e.g., Miller v. Proctor*, 20 Ohio St. 442, 448–49 (1870). But alleged reliance on the advice of counsel is just one factor the court may consider in deciding whether to infer a culpable state of mind. *See Mancz v. McHenry*, 2021 WL 141496, at *18 (Ohio Ct. App. Jan. 15, 2021) ("Without more, the mere assertion that the [defendants] acted on the advice of counsel did nothing to dispel an inference of fraud."); *In re Butler's Est.*, 28 N.E.2d at 191 ("[T]he fact that an executor has had the advice of counsel as to any matter is only one factor entering into the question as to whether he has exercised due care in connection therewith. Other factors may indicate a contrary course of action.").

bankruptcy court decisions declining to give preclusive effect to intent findings that would exclude advice of counsel allegations. *See CWB Holdings, LLC v. Anderson (In re Anderson)*, 2017 WL 5163443, at *8-9 (9th Cir. BAP Nov. 7, 2017); *Campbell v. Spencer (In re Spencer)*, 2017 WL 3470996, at *4-6 (9th Cir. BAP Aug. 11, 2017), *aff'd*, 752 F. App'x 510 (9th Cir. 2019). In *Anderson,* the creditor was awarded damages on a claim for debtors wrongfully recording a lis pendens. *In re Anderson*, 2017 WL 5163443, at *3 In *Spencer*, the court entered judgment on the creditor's claims for, among other things, breach of contract, breach of fiduciary duty, accounting, and constructive fraud. *In re Spencer*, 2017 WL 3470996, at *2. In those cases it was unclear whether and to what extent the debtor's mental state was actually, directly, and necessarily litigated in the prior litigation. *See In re Anderson*, 2017 WL 5163443, at *8 ("[A]s far as we can tell from the record on appeal, the state court did not explicitly find that the Andersons knew (rather than had reason to know) that the lis pendens were improper."); *In re Spencer*, 2017 WL 3470996, at *5 ("Given these contradictory findings [regarding defendant's state of mind], the bankruptcy court did not abuse its discretion in declining to apply issue preclusion to the arbitrator's findings on intent. It did not need to give issue preclusive effect to an unclear or ambiguous decision[.]"). Though *Anderson* and *Spencer* reached results contrary to the one we reach here, they are consistent with the general proposition that where it has been conclusively established that the debtor's mental state was sufficiently culpable to meet the requirements for

19

nondischargeability, the debtor may not later relitigate that issue by interposing allegations of reliance on the advice of counsel.

Here, the Probate Court's state of mind findings were actually and directly litigated, and were necessary to the imposition of liability on Mr. Steffens. The court's findings precisely mirror those required for nondischargeability under § 523(a)(4). Other than his desire to relitigate his state of mind to raise a new argument, Mr. Steffen has offered us no basis for concluding that the Probate Court's intent findings are not binding and conclusive. Ohio law—and full faith and credit—preclude him from doing so.

**D.     The court did not err by denying Mr. Steffen additional time to conduct discovery.**

Because the bankruptcy court properly precluded Mr. Steffen's advice of counsel allegations from further litigation, we also reject Mr. Steffen's contention that the bankruptcy court should have given him additional time to conduct discovery regarding advice of counsel. Because his intent already had been established by operation of the preclusive effect of the Probate Court's decision, Mr. Steffen's advice of counsel allegations—and any discovery relevant thereto—were not material to the resolution of the § 523(a)(4) fiduciary defalcation claim for relief.

## CONCLUSION

For the reasons set forth above, we AFFIRM.

20