

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MICHELE LYNN MCKEE,<br>　　　　　　Debtor. | BAP No. CC-24-1080-CSG<br><br>Bk. No. 6:21-bk-10679-SY |
| LAURA O'KANE; O'KANE & MCKEE<br>LLP,<br>　　　　　　Appellants,<br>v.<br><br>MICHELE LYNN MCKEE,<br>　　　　　　Appellee. | Adv. No. 6:21-ap-01093-SY<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott Ho Yun, Bankruptcy Judge, Presiding

Before: CORBIT, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellants Laura O'Kane ("O'Kane") and O'Kane & McKee LLP

appeal the bankruptcy court's order denying their nondischargeability

complaint against O'Kane's former law partner, chapter 7[1] debtor Michele

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

Lynn Mckee ("McKee"). Appellants sought an order determining that McKee's debt was nondischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(6). Because the bankruptcy court did not err in determining that appellants failed to meet their burden by a preponderance of the evidence, we AFFIRM.

## FACTS[2]

### A.    Prepetition events

McKee and O'Kane are both attorneys who began a romantic relationship in late 2003. In approximately 2009 the couple decided to form O'Kane & McKee, LLP, a law firm in Palm Springs, California ("O&M"). McKee and O'Kane ran the law firm as a partnership although they did not formalize the agreement with a written partnership agreement or other operational documents.

McKee's and O'Kane's personal relationship ended in approximately September 2016. It appears that the resulting animosity and conflict carried

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Cal. Corp. Code" references are to the California Corporations Code.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding, main bankruptcy case, and related proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir.2007) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation omitted).

over to their professional relationship causing the two to dissolve O&M on February 23, 2018.[3]

The dissolution of the law practice was not easy or quick. The fact that McKee and O'Kane were ending their personal relationship and attempting to divide personal assets at approximately the same time, coupled with the lack of O&M operational documents, exacerbated an already difficult process. The main conflicts during the winding up of O&M were the collection and use of an O&M account receivable and the repayment of a loan to O'Kane's mother.

### 1.    The Loan

On May 1, 2015, O'Kane's mother, Corinne O'Kane Long, loaned O'Kane and McKee (in their individual capacities) and their law firm O&M (together, the "Borrowers") $50,000. The parties executed a promissory note memorializing the terms of the loan ("Note"). The Note specifically disclaimed Borrowers' personal liability for breaches. Pursuant to the terms of the Note, the Borrowers were to make monthly payments and the full amount of the Note was due on June 30, 2018. Despite the terms of the Note, none of the Borrowers made any payment on the Note prior to O&M's dissolution and there was no demand for payment.

---

[3] This is the date O&M's malpractice insurance expired. Both McKee and O'Kane started separate law practices after the dissolution of O&M.

## 2. The Robinson receivable

Beginning in 2015, McKee, on behalf of O&M, represented Jason Robinson ("Jason[4]") in a probate matter ("Robinson Probate"). *O'Kane v. Bessey*, 2023 WL 195618, at *1 (Cal. Ct. App. Jan. 17, 2023). In January 2015, the probate court appointed Marilyn Bessey as an administrator of the estate ("Bessey"). In January 2017, Bessey along with the four heirs and their counsel participated in a successful mediation which culminated in a court-approved settlement agreement.

The settlement provided the terms of the distribution of the estate including an agreement that the estate would pay $270,000 of Jason's legal fees ("Robinson Settlement").

In February 2018, after the dissolution of O&M, McKee filed a substitution of attorney in the Robinson Probate indicating that she would continue representing Jason on behalf of her newly formed law firm, McKee Law.

In August 2018, the probate court granted Bessey's petition for a preliminary distribution (the "First Distribution") which provided for several distributions from the estate including $36,000 to the trust account of Jason's attorney. McKee did not use the funds for her personal use. Rather, she used the funds to pay O&M's creditors and Christopher C. Vader, McKee's co-counsel for the Robinson Probate.

---

[4] Because many parties in the Robinson Probate share the same last name, we refer to Jason Robinson as Jason. No disrespect is intended.

On July 30, 2020, the probate court granted Bessey's petition for a second distribution ("Final Distribution"). As to Jason's legal fees, the Final Distribution satisfied the terms of the settlement by disbursing the remaining $234,000 for his legal fees. McKee again paid a portion of the Final Distribution to her co-counsel, Mr. Vader. McKee split the remaining $206,000 equally between her and O'Kane based on her previous communications with Chris Kelley, O'Kane's attorney.

According to McKee, she had informed Mr. Kelley that the petition for a Final Distribution had been filed and she anticipated it would be approved by the probate court. McKee indicated she was willing to use the funds to pay any outstanding O&M debts but to her knowledge there were no remaining outstanding creditors. McKee requested that O'Kane provide a list of any outstanding O&M debts. If O'Kane refused to provide the list or identify the alleged outstanding O&M debts, McKee proposed that the best way to move forward would be an equal split of the Robinson Settlement.

Because McKee never received a list of O&M's alleged outstanding debts, McKee testified that she simply split the proceeds as previously proposed. McKee deposited $103,000 in her McKee Law Firm account and deposited the remaining $103,000 in O&M's account for O'Kane. O'Kane immediately moved the $103,000 from O&M's account to her personal account. Thus, both McKee and O'Kane had $103,000 from the Robinson Settlement in their personal accounts.

O'Kane did not timely appeal either of the probate court's distribution orders. Rather, in September 2020, O'Kane filed a lawsuit against McKee, the McKee Law Firm, and Bessey in California state court, alleging claims for conversion, fraud, and conspiracy to commit conversion and fraud, stemming from the alleged wrongful distribution of the Final Distribution. The state trial court eventually granted Bessey's motion to strike O'Kane's complaint under California Code of Civil Procedure § 425.16, California's anti-SLAPP statute. The decision was affirmed on appeal.

On June 3, 2021, O'Kane filed another state court action. O'Kane sought to vacate both distribution orders in the probate matter, alleging lack of notice and violations of due process. After several hearings, the state court denied O'Kane's motion.

## B. McKee's bankruptcy and O'Kane's adversary complaint

In 2021, McKee filed the underlying chapter 7 petition. On July 29, 2021, O'Kane on her own behalf and as a representative of O&M, filed an adversary complaint seeking a determination that "all amounts owed" by McKee to O'Kane and O&M be excepted from discharge pursuant to § 523(a)(2)(A) (fraud), § 523(a)(4) (fiduciary defalcation), and § 523(a)(6) (willful and malicious injury).

O'Kane filed a first amended complaint on April 20, 2022 (the "Complaint"). In the Complaint, O'Kane alleged that McKee had wrongfully disassociated from O&M and left O'Kane to close the firm,

6

collect the receivables, and pay all firm debt. O'Kane further alleged that "because of Defendant's wrongful disassociation, Plaintiff became the liquidating partner of O&M and had the sole authority to wind down the O&M Partnership." Therefore, O'Kane argued that only she, "as liquidating partner, had the right to collect" and use the Robinson Settlement.

### 1.    Claim for nondischargeability under § 523(a)(2)(A)

O'Kane alleged that McKee's false representations induced Bessey to improperly pay McKee the Robinson Settlement instead of O&M. O'Kane asserted that these "false pretenses, false representations, and actual fraud" caused O'Kane damages in an amount to be proved at trial and the damages should be excepted from discharge pursuant to § 523(a)(2)(A).

### 2.    Claim for nondischargeability under § 523(a)(4)

O'Kane asserted that the partnership created a fiduciary relationship between McKee and O'Kane. O'Kane asserted that McKee's (1) failure to pay O'Kane and O&M the entire proceeds from the Robinson Settlement; (2) diversion of funds meant for O&M for McKee's own personal benefit; and (3) failure to account for the disposition of such funds, constituted fraud or defalcation while acting in a fiduciary capacity. Therefore, O'Kane asserted that the resulting debt should be excepted from discharge pursuant to § 523(a)(4).

7

### 3. Claim for nondischargeability under § 523(a)(6)

O'Kane realleged that McKee "knowingly and intentionally interfered with O&M's Robinson receivable by convincing Bessey through false statements to pay McKee the $270,000.00" rather than O&M. O'Kane asserted that McKee's actions were "willful and malicious" causing O'Kane substantial injury and therefore all resulting damages should be excepted from discharge pursuant to § 523(a)(6).

### 4. McKee's answer

McKee denied the allegations. McKee argued that O'Kane was not the "liquidating partner." McKee argued that both she and O'Kane had equal rights in the winding up of O&M's affairs and had both participated in the process. McKee disputed all allegations that by splitting the Robinson Settlement she had misappropriated O&M funds. McKee argued that she had paid O&M's creditors and was unaware of any outstanding O&M debts. McKee also asserted that if she had wrongfully converted O&M's funds, then so had O'Kane because both partners had deposited their half of the Robinson Settlement into their personal accounts.

McKee also pled six affirmative defenses: (1) failure to state a claim for relief; (2) good faith/mistake; (3) intervening cause (asserting that O'Kane's failure to respond or communicate was a contributing factor); (4) contribution (arguing that if the bankruptcy court determined that she should deposit her share of the Robinson Settlement into O&M's operating account then O'Kane should also be ordered to return her share); (5)

8

authority to act (arguing that McKee did not wrongfully dissociate and that McKee had equal authority to wind up the affairs of O&M); and (6) reservation of further defenses which may be pled after discovery.

## 5. Stipulated facts

Prior to trial, the parties presented a joint pretrial stipulation which included 54 stipulated facts. Among the agreed facts was an agreement that McKee had not engaged in any type of fraud regarding the Robinson Settlement.

## 6. Bankruptcy court's ruling

The court held a two-day trial starting on March 12, 2024. At the conclusion of the trial, the court gave an oral ruling. The bankruptcy court determined that O'Kane had not met her burden of proof as to her § 523(a)(4) and § 523(a)(6) nondischargeability claims.[5]

The bankruptcy court noted that unlike the previously litigated homestead exemption issue[6] which was an issue of law, the

---

[5] Because the parties stipulated to the fact that McKee had not committed fraud, the bankruptcy court determined that O'Kane had abandoned her § 523(a)(2)(A) claim.

[6] Previously, the parties litigated McKee's entitlement to California's homestead exemption. McKee had listed her one-third interest in certain property on her schedule A/B and claimed the homestead exemption in that portion. After extensive briefing and an evidentiary hearing, the bankruptcy court ruled that McKee did not qualify for a homestead exemption because she no longer lived at the property and did not demonstrate the requisite intent to return to reside at the home. The decision was affirmed on appeal. *McKee v. Anderson (In re McKee)*, BAP No. CC-22-1042-GTS, 2022 WL 17091179 (9th Cir. BAP Nov. 18, 2022), *aff'd*, 90 F.4th 1244 (9th Cir. 2024).

nondischargeability issue was dependent upon facts and the facts were "very much disputed."

### a. Nondischargeability under § 523(a)(4) for fraud or defalcation

The bankruptcy court explained that to establish that McKee committed defalcation while acting in a fiduciary capacity under § 523(a)(4), O'Kane had to demonstrate by a preponderance of evidence that McKee misappropriated or failed to properly account for money held in her fiduciary capacity. O'Kane also had to establish McKee's culpable state of mind consistent with the standard set forth in the holding of *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013). The bankruptcy court explained that this meant that O'Kane had to demonstrate that McKee acted with a conscious disregard of or willful blindness to a substantial and unjustifiable risk that her conduct would violate her fiduciary duty.

The bankruptcy court determined O'Kane established that McKee was a fiduciary because O&M was a partnership and under California law, partners owe a fiduciary duty to each other and the partnership. The bankruptcy court determined, however, that O'Kane failed to establish by a preponderance of the evidence that McKee committed defalcation.

The bankruptcy court found that although O'Kane designated herself as the liquidating partner with sole authority to wind up the affairs of O&M, there was no written agreement designating O'Kane as the liquidating partner and there was no evidence presented that McKee

10

agreed to give O'Kane such authority. The bankruptcy court found that consequently, both O'Kane and McKee had authority to wind up the affairs of O&M and both had continuing obligations to O&M and O&M's creditors until the process was completed. The bankruptcy court then examined the evidence presented as to the Robinson Settlement, the crux of O'Kane's Complaint against McKee.

The bankruptcy court reasoned that the breakdown in communication between the partners impeded the winding up process. The bankruptcy court found that other than demanding control over the entire Robinson Settlement, O'Kane did not present evidence that she provided to McKee a list of O&M's outstanding liabilities or a demand for payment. Consequently, because McKee was "operating in the dark" about O&M's remaining obligations, the bankruptcy court found that McKee "could very well" have thought that splitting the Robinson Settlement would be sufficient to satisfy O&M's outstanding debts. The bankruptcy court reasoned that although the best practice would have been for McKee to deposit the entire Robinson Settlement into O&M's account, McKee's failure to do so could not be considered reckless conduct with a willful blindness to a substantial and unjustifiable risk that her conduct would violate her fiduciary duty. The bankruptcy court explained, "It's hard to find someone's conduct to be reckless, and that they are acting in willful blindness, when parties can[not] agree on what to do."

Based on its findings from the evidence presented, the bankruptcy court determined that O'Kane had not established the elements of her § 523(a)(4) claim by a preponderance of the evidence and ruled in favor of McKee.

### b. Nondischargeability under § 523(a)(6) for willful and malicious injury

The bankruptcy court next explained that § 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The bankruptcy court determined that from the record presented, McKee's actions were not willful or malicious. The bankruptcy court supported its determination with several findings of fact including: (1) there was no agreement as to the process for winding up the affairs of the partnership; (2) O'Kane's testimony was less credible than McKee's testimony; (3) McKee and the other Borrowers breached the terms of the Note, however a broken promise to pay essentially describes all debtors in bankruptcy and therefore cannot be considered willful and malicious without more; (4) McKee attempted to determine whether there were any remaining O&M creditors but O'Kane refused to communicate; (5) the lack of communication prevented a meeting of the minds as to O&M's remaining creditors and McKee's remaining obligations; and (6) McKee did not have a subjective intent or motive to injure O&M or O'Kane when she decided to split the Robinson Settlement.

12

Based on its factual findings, the bankruptcy court determined that O'Kane had failed to establish that McKee caused a malicious and willful injury and denied O'Kane's § 523(a)(6) nondischargeability claim.

On May 9, 2024, the bankruptcy court entered judgment consistent with its oral ruling ("Order Denying Nondischargeability").

O'Kane and O&M timely appealed the Order Denying Nondischargeability.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in denying O'Kane's § 523(a)(4) nondischargeability claim.

Whether the bankruptcy court erred in denying O'Kane's § 523(a)(6) nondischargeability claim.

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions de novo, and we review its factual findings for clear error. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd*, 407 F. App'x. 176 (9th Cir. 2010). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*,

606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## DISCUSSION

On appeal, O'Kane focuses almost exclusively on the disposition of the Robinson Settlement during the winding up process. O'Kane asserts the bankruptcy court erred because McKee knew the Robinson Settlement was an O&M receivable. Therefore, any decision by McKee other than to deposit the entire amount into O&M's account was an intentional wrong while acting as a fiduciary sufficient to satisfy *Bullock* and cause the debt to be nondischargeable pursuant to § 523(a)(4) and a willful and malicious injury under § 523(a)(6). Beyond her conclusory statements, O'Kane fails to specifically identify a legal error of the bankruptcy court or direct the Panel to specific erroneous factual findings by the bankruptcy court.

## A.   O&M's dissolution and winding up.

O&M was a two-person, at will partnership. Therefore, pursuant to California law, there was no disassociation by McKee, wrongful or otherwise.

In the absence of a written partnership agreement, a partnership is governed by the California Revised Uniform Partnership Act of 1994 ("RUPA"). Cal. Corp. Code §§ 16100-16962. A partnership at will is one "in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." *Corrales v.*

*Corrales*, 198 Cal. App. 4th 221, 226 (2011) (citing Cal. Corp. Code § 16101(11)).

RUPA governs the dissolution, winding up, and termination of partnerships. Cal. Corp. Code § 16802. Dissolution is the first step and RUPA allows a partnership at will to be dissolved "by the express will . . . of at least half of the partners." Cal. Corp. Code § 16801(1). In a two-person partnership, if one partner withdraws, the partnership dissolves automatically by operation of law because a partnership must consist of at least two persons. Cal. Corp. Code § 16101(a)(9). Relatedly, a person cannot dissociate from a two-person partnership because "[a] person cannot dissociate from a dissolved partnership." *Corrales*, 198 Cal. App. 4th at 227.

Because O&M was dissolved and there was no wrongful dissociation, both McKee and O'Kane had the right to participate in the winding up of O&M's affairs. After dissolution, a partnership continues "only for the purpose of winding up its business" and "is terminated when the winding up of its business is completed." Cal. Corp. Code § 16802(a). "Winding up is the process of completing all of the partnership's uncompleted transactions, of reducing all assets to cash, and of distributing the proceeds, if any, to the partners." *Heller Ehrman LLP v. Davis Wright Tremaine LLP*, 4 Cal. 5th 467, 481 (2018) (internal quotation marks and citation omitted). In a two-person partnership, absent an agreement to the contrary, both partners have equal authority in winding up the partnership's business because

15

neither partner dissociates. Cal. Corp. Code § 16803(a) ("a partner who has not dissociated may participate in winding up the partnership's business").

Here, based on California partnership law, the bankruptcy court correctly determined that O'Kane could not unilaterally appoint herself as the liquidating partner with the sole authority for winding up O&M's affairs. Rather, the bankruptcy court correctly determined that McKee and O'Kane each had an equal right to windup O&M's affairs.

**B.    The bankruptcy court did not err in denying O'Kane's § 523(a)(4) nondischargeability claim.**

**1.    Nondischargeability standards for defalcation under § 523(a)(4).**

Section 523(a)(4) excepts from discharge "any debt for fraud or defalcation while acting in a fiduciary capacity." To prevail on a nondischargeability claim under § 523(a)(4), a plaintiff must allege and demonstrate that (1) there was an express trust; (2) the debtor was acting as a fiduciary to the creditor at the time the debt arose; and (3) the debt arose from the debtor's defalcation. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997), *abrogated on other grounds by Bullock*, 569 U.S. at 274.

Defalcation has two elements: a breach of a fiduciary duty and a culpable state of mind. *Maxwell v. Maxwell (In re Maxwell)*, 509 B.R. 286, 289 (Bankr. E.D. Cal. 2014). A breach of fiduciary duty entails "misappropriation of trust funds or money held in any fiduciary capacity; [or] the failure to properly account for such funds." *Lewis v. Scott (In re*

16

*Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996) (internal alteration omitted). The culpable state of mind must involve "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269. "Where actual knowledge of wrongdoing is lacking" this state-of-mind requirement is satisfied "if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Id.* at 274 (internal quotation marks omitted) (citation omitted). Further, the "risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a **gross deviation** from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* (emphasis in original).

In this case, the parties do not dispute they were each a fiduciary. *Ragsdale v. Haller*, 780 F.2d 794, 796-97 (9th Cir. 1986) (recognizing that partners in California partnerships are fiduciaries within the meaning of § 523(a)(4)). The parties dispute whether McKee's decision to split the Robinson Settlement was defalcation while acting as a fiduciary.

**2. Application of the elements of § 523(a)(4) nondischargeability claim.**

O'Kane's argument on appeal is simply a regurgitation of her argument at trial. O'Kane asserts that by splitting the Robinson Settlement rather than depositing the entire sum into O&M's account, McKee

17

committed defalcation while acting in a fiduciary capacity. O'Kane argues that the bankruptcy court erred because it erroneously found that McKee's actions did not rise to the level of "ill intent and knowing bad faith conduct" sufficient to meet the standard for defalcation announced in *Bullock*. We find O'Kane's argument unavailing.

First, the bankruptcy court did not err in determining that O'Kane failed to demonstrate that McKee misappropriated or failed to account for the Robinson Settlement given that McKee did not attempt to hide the funds or to divide the Robinson Settlement unevenly. Rather, McKee clearly communicated her intent to split the Robinson Settlement evenly based on her belief that she had no remaining obligations as to O&M's liabilities.

Second, McKee was not presented with objective evidence demonstrating she had remaining obligations to O&M's creditors. It is undisputed that there was no agreement, written or otherwise, between O'Kane and McKee as to the process for winding up O&M's affairs. The evidence demonstrated that McKee paid several of O&M's creditors during the winding up process and specifically asked O'Kane several times prior to splitting the Robinson Settlement for a list of any remaining outstanding debts. O'Kane, however, refused to respond. The record also demonstrates that, despite O'Kane's vigorous assertions that there were thousands of dollars of outstanding liabilities at the time McKee split the Robinson Settlement, O'Kane failed to introduce credible evidence to support her

assertions. The bankruptcy court explained that the evidence O'Kane presented to the court "really doesn't tell anything" about O&M's liabilities. As to McKee's knowledge that the debt on the Note remained outstanding, the bankruptcy court determined that McKee credibly testified that there was a belief that they were not going to have to repay the loan given there had never been any demand for payment despite the Note maturing years earlier.

Finally, O'Kane did not establish that McKee had the requisite mental state. From our review of the record, the bankruptcy court's finding that there was no meeting of the minds as to O&M's remaining creditors or McKee's remaining obligations was not clearly erroneous. Because there was no agreement as to whether there were remaining obligations at the time McKee split the Robinson Settlement, the bankruptcy court did not err in finding McKee's conduct during the winding up did not rise to the level of consciously disregarding, or being willfully blind to, a substantial and unjustifiable risk that her conduct was violating her fiduciary duty, the standard announced in *Bullock*.

Because the bankruptcy court applied the correct legal standard and its factual findings were supported by facts in the record, the bankruptcy court did not err in denying O'Kane's § 523(a)(4) nondischargeability claim.

**C.  The bankruptcy court did not err in denying O'Kane's § 523(a)(6) nondischargeability claim.**

    **1.  Nondischargeability standards for willful and malicious injury under § 523(a)(6).**

Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The willfulness analysis is separate from the malice analysis, and the two elements must not be conflated. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* at 1142; *see also Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A willful injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." (citation and quotation marks omitted)). This analysis requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1144-46. In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without

20

just cause or excuse.'" *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)). Additionally, the wrongful conduct must be tortious under state law. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) ("We begin from the proposition that tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6).").

### 2. Application of the elements of a § 523(a)(6) nondischargeability claim.

On appeal, O'Kane allocates a mere two paragraphs to persuade the Panel that the bankruptcy court erred in denying her § 523(a)(6) nondischargeability claim. O'Kane asserts that "retaining the Robinson Receivable . . . ultimately result[ed] in McKee's personal distributions exceeding that allowed by the default partnership rules and in an uneven distribution of partnership proceeds to her own personal benefit."

From our independent review of the record, the bankruptcy court did not err in denying O'Kane's § 523(a)(6) nondischargeability claim for several reasons. First, the evidence demonstrates that O'Kane engaged in the same conduct of which she complains, she deposited her one-half of the Robinson Settlement into her personal account. Yet, O'Kane only assigns wrongdoing to McKee. Second, because O'Kane refused to communicate with McKee regarding what she believed were O&M's remaining O&M liabilities, the bankruptcy court's finding that McKee did not have a subjective motive to inflict injury was not illogical and was supported by

21

the record. Finally, O'Kane has not alleged tortious conduct by McKee, a required element of a § 523(a)(6) claim. Rather, she merely states that McKee may have reaped a little additional unearned benefit by evenly splitting the Robinson Settlement. It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6). *See Barbachano v. Allen*, 192 F.2d 836, 838 (9th Cir. 1951); *In re Akridge*, 71 B.R. 151, 154 (Bankr. S.D. Cal. 1987) (debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities, not debts stemming from breach of contract).

Because the bankruptcy court applied the correct legal standard and its factual findings were supported by facts in the record, the bankruptcy court did not err in denying O'Kane's § 523(a)(6) nondischargeability claim.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment.